FILED
2012 Oct-23  PM 07:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FREDERICK MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.** |
| | ) | **2:11-cv-01000-KOB** |
| **v.** | ) | |
| | ) | |
| **J & M TANK LINES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S COUNSEL'S MOTION FOR SANCTIONS

COMES NOW Plaintiff's counsel and hereby requests this Court enter sanctions against Defendant, J&M Tank Lines, Inc. (J&M), its attorneys, Walter Kruger and Tiffani Casey, and the law firm with which its attorneys are affiliated, Fisher & Phillips, LLP. As grounds therefore Plaintiff's counsel states as follows:

## I.        INTRODUCTION

The actions of Defendant and its counsel during the discovery process and trial of this case have been so reprehensible that such actions have never before been witnessed by Plaintiff's counsel. The actions of Defendant and its counsel are so shocking and offensive in reciting the following events, their actions almost appear to be unreal. However, the actions of Defendant and its counsel are very real.  The shocking trial behavior is documented in the transcript of the trial of this cause of

action. Defendant and its counsel continued to engage in known reprehensible conduct after repeated admonishments by this Court, making it abundantly clear this Defendant and its counsel have little or no respect for the Court, the judicial process, Plaintiff, nor Plaintiff's counsel. The actions of Defendant and its counsel require serious, compelling and deterring sanctions, or it is feared this history will repeat itself, as well as encourage others to engage in the same outrageous conduct. Plaintiff's counsel is filing this Motion for Sanctions without the benefit of the trial transcript and requests leave to amend this Motion for Sanctions upon receipt and review of the same if the Court deems it helpful.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

1.      The instant case was filed by Plaintiff on March 17, 2011. (DOC 1).

2.      On May 11, 2011, Walter Kruger and Albert Brennan, counsel for Defendant, filed Motions for Leave to Appear *Pro Hac Vice,* (DOC's 11& 12), which were granted by the Court on May 31, 2011.

3.      Extensive discovery ensued and Defendant filed its Motion for Summary Judgment on March 30, 2012. (DOC 24). Plaintiff filed his Opposition to Defendant's Motion for Summary Judgment on April 24, 2012, (DOC 29), which was amended on May 1, 2012. (DOC 31). On August 27, 2012, this Court entered its Memorandum Opinion and Order regarding Defendant's Motion for Summary Judgment, denying

the motion as to Plaintiff's claim of discriminatory termination based on race.  (DOC 35).[1]  This Court set the case for pretrial conference with trial to begin on October 15, 2012.  (Doc. 46).

4.     On September 27, 2012, seventeen (17) days prior to the trial of this case, Defendant emailed Plaintiff's counsel five (5) pages of relevant and discoverable documents. The events regarding this untimely disclosure are set forth in Plaintiff's first Motion for Sanctions, (DOC 60). The documents produced on the eve of trial should have been produced as part of Defendant's Initial Disclosures pursuant to Fed. R.Civ. P. 26 or discovery requests made by Plaintiff in the form of interrogatories and/or requests for production. These five (5) pages were not produced by Defendant until **<u>after</u>** the Court entered its Memorandum Opinion denying summary judgment. Defendant and its counsel represented to the Court, there was no known need or requirement to produce these documents until after the Court denied summary judgment. (DOC 61).

5.     As a result of the last-minute disclosure by Defendant and its counsel, on October 3, 2012, Plaintiff filed his first Motion for Sanctions against Defendant requesting the Court direct a verdict in favor of Plaintiff or, in the alternative, continue

---

[1]Plaintiff voluntarily dismissed all pending claims, except for his claims regarding discriminatory termination.

the trial of the case and re-open discovery for the limited purpose of taking depositions related to the newly-produced documents. (DOC 60). Plaintiff's counsel also requested the Court require Defendant to conduct a due diligence search of all documents. (DOC 60).

6.      This Court granted in part and denied in part Plaintiff's Motion for Sanctions after conducting a pre-trial conference on Tuesday, October 9, 2012, and Thursday, October 11, 2012, before trial on Monday, October 15, 2912.  (DOC 70). The Order on Plaintiff's first Motion for Sanctions precluded Defendant from offering into evidence any of the documents addressed in Plaintiff's Motion.  (DOC 70).

7.      On October 9, 2012, Tiffani Casey was present at the Pre-Trial conference. On October 10, 2012, Tiffani Casey filed a Motion to for Leave to Appear Pro Hac Vice, (DOC 68), which was granted by this Court on October 15, 2012.  The Court simultaneously granted Albert Brennan's Motion to Withdraw on October 15, 2012.

8.      All of the attorneys who have entered an appearance for Defendant are employed by Fisher & Phillips, LLP in its Atlanta, Georgia office. Albert Brennan is a partner and team manager for Fisher & Phillips, LLP. Walter Kruger is a partner with Fisher & Phillips, LLP, and his biography on the firms website states, "He [Kruger] has extensive experience in labor and employment law, including litigation and trial

practice  defending employers before federal and state trial courts, as well as before governmental agencies such as the EEOC, OSHA, and the NLRB." Tiffani Casey is an associate with Fisher & Phillips, LLP, in Atlanta Georgia, who received her J.D. from Emory School of Law in 2002. (Exhibit 1, Firm Biographies of Walter Kruger, Tiffani Casey and Albert Brennan).

9.     The trial of this cause of action commenced as scheduled on October 15, 2012. Mr. Kruger and Ms. Casey appeared at trial as counsel for Defendant.

10.     During the trial of this cause of action Defendant continued to produce documents never before seen by Plaintiff's counsel.

11.     On October 16, 2012, the second day of trial, during the Defendant's cross examination of Plaintiff, Defendant attempted to question Plaintiff about COBRA letters allegedly mailed to Plaintiff which are dated September 14, 2009.[2] Plaintiff's counsel objected to the admissibility of these three letters, in part, because they were never produced by Defendant. In addition, these documents were not listed on Defendant's Exhibit List. The Court sustained Plaintiff's objections.[3] (Exhibit two,

---

[2] The COBRA letters dated September 14, 2009, state Plaintiff's coverage will end on September 6, 2009, the day after Plaintiff's termination and before any notice was even allegedly mailed to Plaintiff.

[3] Copies of these previously unproduced documents were provided to the Court and Plaintiff's counsel during Defendant's cross examination of Plaintiff. However, Plaintiff's counsel does not believe Defendant assigned these documents an exhibit number.

COBRA Letters).

12.    On October 16, 2012, also during Defendant's cross examination of Plaintiff, Defendant attempted to introduce as a trial exhibit a COBRA Continuation Coverage Election Form, allegedly signed by Plaintiff's spouse of twenty-five years, Tonya Moore. (Defendant's Trial Exhibit 16). Plaintiff objected to the admissibility of this exhibit, in part, because the document had never been produced to Plaintiff. In addition, this document was not listed on Defendant's Exhibit List. The document was not admitted as an exhibit, but Defendant was allowed to question Plaintiff about <u>one</u> page of the exhibit because the document purported to contain the signature of Plaintiff's spouse. When Plaintiff was questioned about this exhibit, Plaintiff testified this was not his spouse's signature, because his wife of twenty-five years "knows how to spell her last name," which is spelled Moore, not More, as the signature appeared on the exhibit. Defendant and its counsel, knowingly and willingly argued to the Court to allow the use of this exhibit, a document that was obviously without credibility.

13.    Defendant also attempted to introduce as an exhibit, a copy of a document purporting to be a check dated March 10, 2010, in the amount of $13,942.99, made payable to Cooper Green Hospital. (Defendant's Trial Exhibit 17).[4] Plaintiff had never

---

[4]This exhibit has a date of October 16, 2012, in the right hand corner of the document listed by the heading "Current Date:"

seen this document prior trial. The copy of the check does not reference Plaintiff or his spouse, or any person who was the benefactor of this check. Defendant was unable to produce a witness with any personal knowledge as to the authenticity of this document. Plaintiff objected to the admissibility of this document and Plaintiff's objections were sustained.

14.     On October 16, 2012, during Defendant's examination of its employee, Charles Pickens, Safety Director and son of Jim Pickens, Defendant's COO, Defendant questioned Charles Pickens about copies of classified advertisements regarding truck driving jobs allegedly advertised after Plaintiff was terminated. Charles Pickens first represented to have personal knowledge regarding the collection of the classified advertisements. However, upon questioning by the Court, Charles Pickens admitted he had instructed his office **staff** to go to a public library and pull old microfilm or microfish and search for truck driving jobs available after Plaintiff's termination.

15.     Defendant and its counsel were attempting to present testimony regarding these alleged classified advertisements, in support of Defendant's affirmative defenses and in an attempt to show Plaintiff was not mitigating his damages, even though there was abundant evidence already in the trial record Plaintiff had been diligently seeking to mitigate his damages. Again, these alleged classified advertisements were never

produced to Plaintiff. While vouching for the credibility of Charles Pickens, Defense counsel never attempted to prevent this witness from testifying about matters of which counsel for Defendant knew or should have known this witness had no personal knowledge and knowingly questioned Charles Pickens about matters outside the personal knowledge of this witness.

15.     On Wednesday, October 17, 2012, during Defendant's direct examination of Jim Pickens, COO, Mr. Pickens testified about a memo sent to Harold Sumerford, Jr., CEO, regarding the suspension of two Barnsville, Georgia drivers. During Plaintiff's re-cross of Jim Pickens, Plaintiff's counsel questioned Mr. Pickens about this alleged memo sent to Mr. Sumerford. Jim Pickens eventually testified he saw an e-mail about the two Barnesville drivers the Sunday before trial commenced on the next day, Monday, while in a meeting with Mr. Sumerford, Charles Pickens, other J&M employees and counsel for Defendant. (Defendant's Trial Exhibit 19). Plaintiff's counsel had **never** seen this email prior to a copy being handed to Plaintiff's counsel on the third day of trial, with the Defendant's COO, Jim Pickens, on the witness stand testifying.

16.     The issue of when these two Barnesville drivers were suspended, and the identity of decisionmaker who suspended them, was a contested issue of fact throughout discovery and summary judgment. Defendant and its counsel were well

aware of this disputed fact and deliberately hid relevant information that could have possibly put this issue to rest, thus forcing Plaintiff's counsel to go in other directions, blindly, in hopes of stumbling upon this information.

17.    Jim Pickens, COO, testified he, and other witnesses, as well as defense counsel, reviewed the secret email document on the Sunday night prior to the trial on Monday, thus establishing on the record Defendant and its counsel were well-aware of the document prior to trial and willfully and knowingly failed to disclose and produce the document to Plaintiff's counsel until being forced to do so on the third day of trial, as a result of the testimony of the COO.

18.    Defense counsel had the email, Defendant's Trial Exhibit 19, in a folder on defense counsel's trial table with multiple copies already made. However, Defendant nor its counsel provided Plaintiff's counsel with a copy of this email until Jim Pickens, COO, testified as to its existence. Counsel for Defendant, Walter Kruger, easily and immediately retrieved this email from his files, but only after the email came to light as a result of Jim Pickens' misstep in his testimony on cross examination, letting the cat out of the bag regarding the email they were all attempting to hide from the Court and Plaintiff's counsel.

19.    On October 18, 2012, on the eve of closing arguments, the parties settled **only** Plaintiff's claims by mutual agreement, inclusive of all fees and costs associated

with Plaintiff's claims. Given the untrustworthiness caused by the actions of Defendant and its counsel, Plaintiff's counsel felt compelled to have the settlement terms memorialized on the Court record.

20.    The issue of sanctions against Defendant and its counsel were not then, and are not now, part of the settlement of Plaintiff's claims. During the trial of this matter, and before any settlement discussions during trial, the Court expressly advised counsel for the Parties the Court would consider any and all relief requested by Plaintiff's counsel in a Motion for Sanctions, irrespective of any verdict entered in this case.

21.    As a result of Defendant's and its counsel's willful and deliberate discovery abuses, their constant efforts to ambush Plaintiff and his counsel and violate the rules to win at any cost, Plaintiff and his counsel were unduly prejudiced.

22.    Counsel for Plaintiff was required to spend numerous hours unrelated to trial preparation, filing Plaintiff's first Motion for Sanctions regarding Defendant's untimely production of documents on September 27, 2012, on the eve of trial.

23.    In addition, Counsel for Plaintiff was required to spend **valuable** time, both before and especially during trial, arguing about previously undisclosed documents being presented by Defendant as trial exhibits, requesting necessary relief to protect Plaintiff,  and evaluating never before seen and previously undisclosed trial

exhibits presented by Defendant during the trial of this cause of action, rather than preparing for the trial itself.

24.     The repeated discovery abuses and intentional ambushing of Plaintiff and his counsel, in the middle of trial with never produced or previously disclosed documents, has been constant, evidencing **bad faith** on the part of both Defendant and its counsel. It is undisputed high level managers of Defendant were well aware of the issues presented at trial, specifically, that there was an issue of disputed fact regarding the date the two Barnsville drivers were allegedly disciplined and that Plaintiff was requesting documents regarding this issue. Defendant and its counsel had a meeting on the Sunday before trial addressing this very issue and no one, Defendant nor its counsel, ever informed Plaintiff or his counsel of the existence of this document until the third day of trial.

25.     Testimony during discovery and at the trial of this cause of action clearly establishes Defendant and its counsel repeatedly made false statements to the EEOC and the Alabama Department of Industrial Relations. These misrepresentations were a deliberate effort to prevent the EEOC from finding a violation of the statute and issuing a Cause Determination, as well as to prevent Plaintiff from receiving his much needed unemployment compensation benefits. Sadly, Defendant was rewarded by its deceptive behavior and the deceptive practices of its counsel, in that the EEOC

ultimately could not find a violation of statutes because of Defendant's efforts to hide the truth and Plaintiff was also denied his employment benefits.

26.     Defendant made false statements to the EEOC in virtually every correspondence. However, the most telling and compelling evidence of Defendant's and its counsel's attempts to hide the Defendant's discriminatory conduct was the October 5, 2010, correspondence Defendant and its counsel requested to be allowed to send to EEOC only after Defendant and its counsel were informed the EEOC planned to recommend a violation of the statute. "Advised her [Tiffani Casey] that the comparators mentioned in Respondent's position statement seems to have committed the same or similar violations as the Charging Party. I advised her [Tiffani Casey] that I planned to recommend a violation." (Plaintiff's Trial Exhibit 27).

27.     The testimony at trial of Defendant's COO, Jim Pickens, proved, without question, Defendant knowingly provided EEOC with false information on numerous occasions. Jim Pickens was the decision maker who terminated Plaintiff, and no one ever questioned him about the claims set forth in Plaintiff's EEOC charge. Defendant and its counsel were so aware of their dishonesty to the EEOC, that as part of the terms of the settlement recorded on the transcript in the Court's chambers, they brazenly required Plaintiff and his counsel be prevented from addressing these issues with the EEOC, unwilling even at this point to own up to their misrepresentations and

dishonesty. Obviously, only a Court with this power can change this behavior.

28.     Defendant's actions violated the rules regarding discovery, this Court's Pre-trial Order and failed to adhere to the guidelines expressed by the Court for the trial of the case, causing the Court to spend time and resources to somehow address the Defendant's continuing violations. Defendant's counsel also knowingly violated the Court's Order regarding the Parties Motions in Limine. Defendant's conduct, and the conduct of its counsel, is contemptuous, and Plaintiff's counsel requests this Court hold both Defendant and its counsel in contempt.

## III.   ARGUMENT

Federal Rule of Civil Procedure 26(a)(1)(ii) requires "...a party must, without awaiting a discovery request, provide to the other parties:

. . .

> (ii)    a copy – or a description by category and location – of all documents, electronically store information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

If a party fails to meet Rule 26's disclosure requirements, Federal Rule of Civil Procedure 37(c)(1) prohibits that party from "us[ing] that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010).

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. FRCP 37 (c)(1).(Emphasis added). *Cooper v. Southern Co.,* 390 F.3d 695, 728 (11th Cir. 2004).

Rule 37(c) incorporates a concept of fundamental fairness that all parties must adhere to during the discovery process. Further Rule 37(c) not only contemplates, but mandates, that if a party fails to make the required disclosures, and the failure is not harmless, then the party is not permitted to use the evidence. The fundamental purpose of Rule 37 is to ensure that the merits of the case can be addressed at trial without any party suffering prejudice as a result of nonfeasance or malfeasance during discovery. *Centagon, Inc. v. Bd. of Dirs. of 1212 Lake Shore Drive Condominium Ass'n*, No. 00 C 1110, 2002 WL 356483, at *4 (N.D.Ill. Mar.5, 2002).

Rule 37(c)(1) "requires absolute compliance with Rule 26(a)," in that it "'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified." ' *Roberts ex rel. Johnson v. Galen of Virginia, Inc.,* 325 F.3d 776, 782 (6th Cir.2003) (quoting *Vance v. United States,* 1999 WL 455435 *3 (6th Cir. June 25, 1999)) (footnote omitted); *see*

*also Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir.1998) (reasoning that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless"). The burden rests upon the non-producing party to demonstrate that its actions were substantially justified or harmless. *Stallworth v. E-Z Serve Convenience Stores,* 199 F.R.D. 366, 368 (M.D.Ala.2001); *Roberts ex rel. Johnson,* 325 F.3d at 782; *Wilson v. Bradlees of New England, Inc.,* 250 F.3d 10, 21 (1st Cir.2001); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1107 (9th Cir.2001); *Heidman v. County of El Paso,* 171 F.3d 1038, 1040 (5th Cir.1999). *U.S. v. Batchelor-Robjohns*, 2005 WL 1761429, *2 (S.D.Fla.) (S.D.Fla. 2005).

Defendant's constant attempts to ambush Plaintiff and his counsel during trial, and its failure to disclose documents in initial disclosures, September 13, 2012 supplemental disclosures, and response to Plaintiff's discovery requests, until the eve of trial, was not harmless but intentional. Plaintiff and his counsel were prejudiced in adequately contacting witnesses and identifying documents needed in the prosecution of his case. Plaintiff was not only prejudiced during discovery, but was prejudiced in the preparation of his case for summary judgment and trial.   *See Hermeling v. Montgomery Ward & Co., Inc.*, 851 F.Supp. 1369, 1376 (D.Minn.1994) ("Furthermore, Hermeling's counsel's untimely disclosure has unfairly prejudiced

Montgomery Ward in its preparation for this motion [for summary judgment] by effectively precluding any type of formal rebuttal.") (*citing Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 572 (8th Cir.1989)); see also *Taylor v. Medtronics, Inc.*, 861 F.2d 980, 985-87 (6th Cir.1988) (analyzing an earlier version of Rule 37).

Defense Counsel self-servingly argued during the pre-trial hearing on Plaintiff's first Motion for Sanctions he did not know the documents would be needed until after the Court made a Summary Judgment Ruling, belying Rule 37. Then after the Court admonished counsel for Defendant regarding its untimely production of documents on the eve of trial, Defendant and its counsel ambushed Plaintiff and his counsel during trial with never before seen documents.

This Court should uphold the fundamental fairness dictated in Rule 37(c) and sanction Defendant and its counsel  for its dilatory and intentional discovery and trial abuses. Defendant should not be allowed to benefit from such abuse and engage in calculated efforts to ambush Plaintiff and his counsel at trial.

The determination as to whether such failure to produce was indeed harmless is left to the broad discretion of the trial court. *Brand Name Prescription Drugs Antitrust Litig.*, 2001 WL 30454, at *1 (N.D.Ill. Jan. 11, 2001) (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1231 (7th Cir.1990)). To this end, the court should consider the surprise or prejudice to the blameless party, the ability of offender to cure

any resulting prejudice, the amount of disruption to trial that would result from permitting the use of the evidence, and the bad faith involved in not producing the evidence at an earlier date. *Spearman Industries. Inc. v. St. Paul Fire & Marine Ins. Co.*, 138 F.Supp.2d 1088, 1094 (N.D.Ill.2001) (citing *Bronk v. Ineichen*, 54 F.3d 425, 432 (7th Cir.1995)).

Courts have found that, absent a showing of "substantial justification" or "harmless" violation, Rule 37(c)(1) requires a district court to impose a sanction for violation of the disclosure requirement. See, e.g., *Bowe v. Consolidated Rail Corp.*, No. 99-4091, 2000 WL 1434584, at *2 (6th Cir. Sept. 19, 2000) (unpublished) ("It is well-established by this Court and others that Rule 37(c)(1) mandates that a trial court shall sanction a party for discovery violations in connection with Rule 26 unless the violations were harmless or were substantially justified.") (citing *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 & n. 6 (7th Cir.1998) (holding that Rule 37(c)(1) puts teeth into Rule 26 and that "the district court acted well within its discretion when it decided to impose the sanction of precluding the witnesses from testifying" since "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless"); *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996); *Ames v. Van Dyne*, No. 95-3376, 100 F.3d 956, 1996 WL 662899, at*4 (6th Cir. 1996) (unpublished) ("Rule 37 is

written in mandatory terms and 'is designed to provide a strong inducement for disclosure of Rule 26(a) material.'") (quoting *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir.1995)).

Under Rule 37(c), the district court's latitude is wide. See *Poulin v. Greer*, 18 F.3d 979, 984 (1st Cir.1994). For failure to make the specified discovery, the district court is directed to preclude as evidence "any witness or information not so disclosed," and" [i]n addition to or in lieu of this sanction, the court, on a motion and after affording an opportunity to be heard, may impose other appropriate sanctions. Fed.R.Civ.P. 37(c).

In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) (*per curiam*), the Supreme Court stressed the policy reasons for enforcing the discovery rules. The most severe sanctions provided by the rules, the Court explained, "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to **deter** those who might be tempted to such conduct in the absence of such a deterrent." *Id.* at 643. (Emphasis added). While a warning alone might have made the plaintiffs in that case comply with all future discovery orders, "other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts." *Id.*

In *Action Marine v. Continental Carbon*, 243 F.R.D. 670 (M.D. Ala. 2007), the court ordered sanctions against a defendant in the amount of $120,945.59.  The district court adopted the magistrate judge's recommendation to the extent it found the plaintiffs were prejudiced in their presentation of evidence to the jury and on appeal. *Id*.

The *Action Marine* court stated:

> The court is not, however, limited to **actual harm** caused by the misconduct.  Rule 37(c)(1) sanctions are broad and encompass not only the rectification of actual harm, but also allow for sanctions for a defendant's **failure to maintain and preserve the sanctity of the court and to respect its rules**.  A district court may impose "an order treating as contempt of court the failure to obey any orders."   *Id*. at 679, citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695, 102 S. Ct. 2099, 72 L.Ed.2d 492 (1982)(Emphasis added).

"The court also has inherent powers to impose sanctions to achieve the orderly and expeditious disposition of cases where a party's conduct disrupts or impairs the judicial process, especially where there is bad-faith conduct." *Id*.

In *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 799 F.2D 1510, 1522-23 (11th Cir. 1986), the court stated:

> The attorneys of the Law Firm have clearly failed to fulfill these duties. Indeed, they represent yet another case of attorneys having 'sold out to the client'...In so doing, the attorneys of the Law Firm lost sight of the fact that, as members of the bar, and officers of the court, our primary responsibility is not to the client, but tot he legal system.  Our judicial machinery is dependent upon the full support of all members of the bench

and bar.  Advocacy does not include "game playing."  Conduct such as that engaged in here must not, and can not and will not be tolerated.

In this case, Defendant, its attorneys and the law firm representing the Defendant have, for their own gain, and to cause harm to Plaintiff and his counsel, knowingly,  willfully and repeatedly violated this Court's scheduling orders, pretrial orders, orders regarding Motions in Limine, as well as the Federal Rules of Civil Procedure. Defendant has willfully concealed documents; failed to produce documents until the eve of trial; failed to produce documents until it was to their advantage during trial; failed to engage in good-faith discovery; and failed to recognize the sanctity of the Court by failing to adhere to its Orders.

Federal Rule of Civil Procedure 1 requires that the rules be construed to secure the "just" resolution of disputes. "There is no point to a lawsuit, if it merely applies law to lies." The most important critical factor to be considered in a case dispositive sanction is whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." *Connecticut General Life Insurance Company v. New Images of Beverly Hills,* 482 F.3d 1091 (9th Cir. 2007). While Plaintiff's counsel recognizes these abuses did not ultimately cause a case dispositive sanction, these actions were certainly serious enough to warrant a directed verdict. It is clear even now, after presenting all evidence at trial, we do not

know the truth because Defendant and its counsel continued their egregious conduct.

## III.   REQUESTED RELIEF

Plaintiff's counsel has never experienced conduct this egregious and is unsure of all of the sanctions available to the Court. However, Plaintiff's counsel request any and all known and available sanctions that would make an example of, and deter this type of conduct in the future. Plaintiff's counsel request the following sanctions, as well as any other sanctions the Court deems appropriate:

1)      Sanction Defendant's attorneys and the law firm of Fisher & Phillips, in an amount deemed appropriate by this Court, based in whole or in part, on Plaintiff's attorneys' time spent responding and objecting to the bad-faith discovery practices of which they engaged and failure to adhere to this Court's Orders during trial. Plaintiff's counsel expended a total of 37.60 hours filing Plaintiff's first Motion to Compel, 10.30 hours preparing and filing a Motion to Strike, 7.80 hours submitting a Reply to Defendant's Response to Plaintiff's Motion to Strike; and 34.40 hours preparing and filing this Motion for Sanctions, totaling 90.10 hours. Plaintiff's counsel's last approved hourly rate is $375.00, and was approved by the Honorable Virginia Hopkins, *Watson v. Sumera, Inc., et al,* Case No. 4:10-cv-336-VEH.   Plaintiff's counsel has expended a total of 90.10 hours related to pre-trial discovery abuses, for

a total of $33,787.50, in fees. Plaintiff's counsel is requesting additional time to submit a formal fee petition if required;

2)      Sanction Defendant, its attorneys and the law firm of Fisher & Phillips in an amount to impose a harsh enough sanction and penalty to achieve the orderly and expeditious disposition of cases in the future. Without a doubt the above described conduct disrupted and impaired the judicial process. Clearly, these acts constitute bad-faith;

3)      Find all defense counsel have failed to meet this Court's requirements for being in "good standing" with this Court and the Northern District of Alabama;

4)      Require defense counsel and any attorney in the firm of Fisher & Phillips to provide each district court in the State of Alabama in which he or she applies for admission *pro hac vice* a copy of this Court's ruling on this Motion for Sanctions;

5)      Require defense counsel to submit to any and all state bar where they are admitted to practice a copy of this Court's ruling on this Motion for Sanctions so as to inform any bar association that defense counsel are not in good standing with this Court and the Northern District of Alabama; and

6)      Enter an Order holding Defendant and its counsel in contempt of Court and apply all available sanctions therewith.

WHEREFORE, Premises considered, Plaintiff's counsel respectfully requests

this Court grant this Motion for Sanctions as set forth herein.

Respectfully submitted,

/s/ Cynthia Forman Wikinson,
CYNTHIA FORMAN WILKINSON

**OF COUNSEL:**
CYNTHIA FORMAN WILKINSON, ESQ.
WILKINSON LAW FIRM, P.C.
811 New South Saving Building
215 North 21st Street
Birmingham, Alabama 35203
Tel:  (205) 250-7866

s/Larry R. Mann
LARRY R. MANN
Attorney for Plaintiff

**OF COUNSEL:**
Larry R. Mann, Esq.
701 New South Saving Building
215 North 21st Street
Birmingham, Alabama 35203
Tel:  (205) 326-6500

**CERTIFICATE OF SERVICE**

I hereby certify that on **October 23, 2012**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Walter Kruger, Esq.
Tiffani Casey, Esq.
FISHER & PHILLIPS
1075 Peachtree Street, NE
Suite 3500
Atlanta, GA  30309

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: None.

   s/Cynthia Forman Wilkinson
**WILKINSON LAW FIRM, PC**