FILED

2013 Mar-04  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | | |
|---|---|---|
| **FREDERICK MOORE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | **CV-11-BE-01000-S** |
| **J & M TANK LINES, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |
| | ] | |

## MEMORANDUM OPINION

This matter is before the court on "Plaintiff's Counsel's Motion for Sanctions" (doc. 76) and Defendant's "Motion to Enforce October 18, 2012 Settlement Agreement" (doc. 87).  For the reasons stated in this Memorandum Opinion, the court FINDS that the Plaintiff's motion for sanctions is due to be GRANTED and the Defendant's motion is due to be DENIED.  Because the motions are intertwined, the court prefaces analysis of the motions with a background statement.

## Background to Motions

In this employment discrimination suit, the Plaintiff, a driver for Defendant, claimed that the Defendant discriminated against him based on race by terminating him for hooking up to the wrong trailer and failing to properly verify his paperwork, while white employees who committed the same or substantially similar infraction were not terminated.  During discovery and at the summary judgment stage, certain disputes arose regarding whether non-Birmingham

employees received written warnings about the consequences of hooking up to the wrong trailer;

the identity of the decisionmaker for the less harsh discipline of white drivers in Georgia; the

date supervisor Kenny Brown received a promotion to supervisor in charge of those white

drivers; and the date the white employees in Georgia were disciplined. During the course of

discovery, the Plaintiff requested, among other matters, the personnel records of the Plaintiff and

his white comparators in Georgia, and asked during the deposition of Kenny Brown about the

date he was promoted to supervisor and documentation about the discipline of the white Georgia

drivers.  As discussed in greater depth below, Defendant did not produce during the discovery

period documents showing the date Kenny Brown was promoted or documentation about

discipline of the white Georgia drivers, or insurance documents regarding the Plaintiff.

However, after the discovery period and after the summary judgment stage, the Defendant later

attempted to use at trial documents addressing the disputed issues listed above and insurance

documents regarding the Plaintiff that had not been produced with the Plaintiff's personnel

records.

  The case went to trial, and the parties settled the case after the close of the evidence and

as counsel were preparing for closing arguments to the jury.  The Plaintiff filed the motion for

sanctions five days after the settlement of the case and dismissal of the jury, and the Defendant

filed the motion to enforce settlement approximately a month later.

Documents Produced for the First Time Shortly Before Trial

  The motion for sanctions currently before the court  is not the first such motion that the

Plaintiff filed in this case.  The first motion for sanctions (doc. 60) objected to the Defendant's

producing relevant and discoverable documents on September 27, 2012, over six months after

the discovery deadline, almost a month after the court had ruled on the Defendant's motion for summary judgment, and seventeen days before the case was set for trial.   Those documents arguably related to disputed issues about when Walker and Stephens received discipline and when Brown was promoted to a supervisory position over them; these documents included (1) two Settlement Sheets for comparator Douglas Walker with handwritten notes (doc. 60-1, at 3 & 4); (2) two Settlement Sheets for comparator Noah Stephens with handwritten notes (doc. 60-1, at 5 & 6); and (3) a printed screen shot of a program maintained by Defendant listing hourly rates for Kenny Brown that indicated an increase in pay but did not explain, for example, whether the increase in pay was as a result of a cost-of-living increase, a promotion, or a change in job duties (doc. 60-1, at 7).  The court granted in part the motion for sanctions, precluding the Defendant from offering into evidence or using in any way at trial the documents produced for the first time in September 2012.  The court denied the motion for sanctions to the extent that the Plaintiff asked that a verdict be directed in his favor or that the court continue the trial and re-open discovery to take depositions related to the newly-produced documents.

Documents Produced for the First Time at Trial

On October 15, 2012, the trial of this case began.  During the trial, Defense counsel attempted on several occasions to use for questioning and/or introduce into evidence documents that it had not produced in the discovery process, that it had not amended Rule 26 disclosures to reflect their existence, and that it had not placed on its exhibit list for trial.  For example, on the second day of trial, during the cross-examination of the Plaintiff, the Defendant's counsel

attempted to question the Plaintiff about COBRA documents[1] that the Plaintiff's counsel had never seen before trial cross-examination and that had not been listed as a trial exhibit. The Plaintiff objected to the use of those documents at trial, and the court sustained the objection. The court did allow the Defendant to question the Plaintiff to a limited extent about one page of a COBRA document entitled "COBRA Continuation Coverage Election Form" because it purported to contain his wife's signature. However, the Plaintiff testified that the signature was not that of his wife and, in fact, contained a misspelling of her last name, spelling it as "More" instead of "Moore."

As another example, Defense counsel also attempted to introduce – as a trial exhibit or as a document to refresh Plaintiff's recollection during his trial testimony – a check dated March 10, 2010 in the amount of $13,942.99 made payable to Cooper Green Hospital. Defense counsel had not produced that check during discovery, during the Plaintiff's deposition testimony, or indeed, at any point prior to trial testimony, and had not listed the check on the trial exhibit list. The check did not contain wording or references linking it to Plaintiff or his family, and the Defendant was unable to produce a witness who could testify about the authenticity or relevance of that document.   The court sustained the Plaintiff's objections to the use and admissibility of this document.

As a third example, counsel for Defendant attempted to present testimony about certain classified advertisements during the direct examination of Defendant's safety director even though those advertisements had neither first been produced to the Plaintiff nor placed on the

---

[1] These documents were COBRA letters dated September 14, 2009 and a COBRA Continuation Coverage Election Form allegedly signed by Plaintiff's spouse - documents that would have been part of the Plaintiff's comprehensive employment file.

exhibit list.  Further, in response to the court's questioning of the safety director, the court learned that the safety director had no personal knowledge about the collection of the classified advertisements. The court sustained objections to the use of the advertisements given the Defendant's  failure to timely produce them and the witness's lack of personal knowledge about their procural.

As a fourth example, during the direct examination of Defendant's COO Jim Pickens, counsel for the Defendant solicited testimony based on information gleaned from a memo from Keith Morris emailed to Rick Berger and other J&M employees originally dated February 2, 2010 regarding the suspension of two Barnesville, Georgia drivers and re-sent to J&M at its request on the Friday before trial.  Counsel for Defendant knew[2] about this memo before trial commenced but failed to produce it to the Plaintiff prior to trial and failed to place it on the exhibit list for trial.  Because the identity of the decisionmaker who suspended these drivers and the reasoning behind the discipline were key issues raised at the summary judgment stage and trial, this memo was relevant and material, and a diligent search should have been made for all documents related to that decision long before the eve of trial. However, despite the fact that three J&M personnel who had received this memo had been deposed during discovery and the fact that J&M personnel discussed this memo the weekend before trial, the first time that counsel for Plaintiff learned about or saw this email was on the third day of trial with Pickens on the witness stand, testifying.  The court and counsel for the Plaintiff learned about the memo at that

---

[2] Jim Pickens testified that he and other witnesses reviewed the emailed memo with Defense counsel on the Sunday night before trial.  At a bench conference during the trial, Defense counsel told the court that the emailed memo was re-sent to J&M on the Friday before trial began on Monday.

point not because Defense counsel specifically referred to it but because Jim Pickens made an unsolicited reference to the email during his trial testimony.  Although counsel for Defendant had copies of the emailed memo readily available and distributed them to Plaintiff's counsel *after* Pickens mentioned it on the stand, Defense counsel appeared surprised and flustered that Pickens had specifically mentioned the memo.

As a fifth example, during the trial testimony of Defense witness Kenny Brown, Defense counsel asked the witness about a date heavily disputed during summary judgment briefing and during trial – the date Brown was promoted to driver manager – and to assist in setting that date, counsel referred to Brown's examination of his own paycheck stubs.  Plaintiff's counsel objected because Defendant had not produced Brown's paycheck stubs during discovery or prior to Brown's trial testimony, and had not listed those stubs on the exhibit list for trial.

As noted, the trial contained numerous instances when the Plaintiff's counsel objected to the attempted introduction of or reference to the documents discussed above, and the court sustained those objections.  The court repeatedly communicated to counsel its displeasure about the way the counsel for Defendant had conducted the process of discovery and had introduced surprise documents at trial, and it also communicated its amenability to considering a motion for sanctions:

> I have never had a trial where I have had this many issues about documents produced at trial that should have been produced as part of an employee's, if not personnel file, records reflecting the employee's documents and documentation.
> ***
> [to Defense counsel] It's not hiding the truth from the jury.  It's hiding the truth from the plaintiff.  You knew in March that it was an issue.  You knew in March that the plaintiffs were trying to find out when he was promoted and when these additions were made.  And if you were going to come up

with information to deal with that issue, that is part of your obligation under Rule 26, your disclosure. . .You have an obligation to update, not on the eve of trial and not during the trial.  And that was what the purpose of the motion was about, that we ruled on last week. . .You haven't heard anything that I have said in the last week, have you, Mr. Kruger?  That you don't wait until trial to come up with information that is relevant to issues that are at trial and expect to come and surprise the plaintiff with it.  That is the whole purpose of the disclosure rules and the discovery rules so that we don't have trial by ambush.

***

But [the witness's] memory has been refreshed by documents that weren't available or produced to the plaintiff in the course of discovery.  And you keep telling me that I'm trying to hide the truth from the jury.  But what I'm concerned about is the defense trying to hide the truth from the plaintiff by not producing, through the course of discovery, or updating through the course of disclosures, documents that are relevant to issues that have been known to the defendant to be at issue in this case for months and months and months.  And then to come and use them to change the deposition testimony of witnesses by refreshing their memory with documents that should have been produced or should have been shown to deposition witnesses prior to their depositions so that we could have gotten to the truth, as you call it, long before this date in trial.

Not only during the trial did the court refer to sanctions against the Defendant for such conduct, but counsel for the Plaintiff objected repeatedly during the trial about surprise documents and also specifically stated the intention to request sanctions:

MS. WILKINSON: I think there needs to be some sanction for this continued – I'm at a loss for words.  I have never, ever seen such conduct in my life.  And I think there needs to be a severe and strong sanction against the defendant and their counsel for sitting in a room and talking about this [February 2, 2010 email from Keith Morris to Rick Berger at J&M] before trial and not emailing us – they brought in all kind of documents during this trial that we have never seen.  Not once did they mention this.  Not once.

<u>Settlement</u>

During the trial of the case, after the close of the evidence and as the court was preparing for closing arguments, counsel advised the court that the parties had reached a settlement

agreement.  The court held a settlement conference, the transcript of which is sealed.  Counsel

asked for the terms and conditions of the settlement to be placed on the sealed record, and all

counsel agreed that the discussion of those terms and conditions was an accurate reflection of the

complete agreement between the parties.  The court will not quote from that sealed transcript, but

it has studied that transcript in addressing these motions.  The court notes that the settlement

agreement, stated on the record of that conference, encompassed matters not covered by the

claims in the Complaint.  For example, one term of the agreement was that the Plaintiff agreed

not to make certain communications with a particular third party.  (Sealed Doc. 80, at 4-6).

However, despite that specific term – something the Plaintiff agreed not to pursue – as well as

the specific references during the trial itself to a motion for sanctions against Defense counsel,

the conference and settlement agreement included *no* reference to sanctions or any agreement *not*

to pursue sanctions against J&M.

## Analysis

In the instant case, Defendant argues in the motion to enforce settlement that the

settlement agreement precluded the filing of any motion for sanctions.  Accordingly, the court

will first address that issue.

Motion to Enforce Settlement

In this motion, the Defendant argues that the settlement agreement between the parties

precludes the filing of a motion for sanctions because the settlement of all the Plaintiff's claims

did not exclude, except, or reserve any rights to pursue a motion for sanctions, and if counsel for

the Plaintiff intended to pursue sanctions for discovery abuses, that intention should have been

8

specifically stated at the time of settlement and excepted from the settlement.

The Plaintiff argues that his counsel required that the terms and conditions of the settlement agreement be placed on the record so that a written statement of the terms would exist. Based on the transcript, the settlement agreement included settlement of Plaintiff's claims in this lawsuit and attorneys fees, and anything else specifically stated during the settlement conference, such as the agreement not to make certain communications with a particular third party. Because the Plaintiff's claims in the lawsuit did *not* address sanctions and because the issue of sanctions had not been raised in the settlement conference and included in the terms and conditions memorialized in the record, the Plaintiff argues that the settlement does not preclude filing and pursuing sanctions. Plaintiff's counsel notes that, in the settlement conference, the court asked the parties if they had placed all the terms and conditions of the settlement agreement on the record, and that counsel for the Defendant acknowledged they had.

The court agrees with the Plaintiff that the issue of sanctions for discovery abuses is completely separate from the Plaintiff's claims in this lawsuit. As stated in the Complaint (doc. 1) and reiterated in the Pretrial Order (doc. 46), the Plaintiff's claims in this case were for alleged acts of race discrimination during 2009 in his employment with J&M. The sanction issue arises based on allegations of discovery abuses that occurred during the pendency of this case in 2011 and 2012. In other words, the alleged misconduct in the motion for sanctions was not the alleged misconduct that the jury would have addressed had it been allowed to deliberate, but was an issue the court would address based on the dictates of the Federal Rules of Civil Procedure. Thus, when the parties stated on the record during the settlement conference that the settlement included Mr. Moore's *claims in this lawsuit*, the court understood those claims to be the claims

9

set out in the Complaint and reiterated in the Pretrial Order: the allegations of race discrimination and any claims arising from his employment with the Defendant.

To the extent that the settlement comprised any other matters, the parties stated that they would specify those other matters for the record. They did specify other matters, such as the agreement that the Plaintiff would not notify the third party about certain information. If the parties had another agreement, such as an agreement not to pursue sanctions, they presumably would have and should have stated that agreement for the record, but they did not. The parties were very clear that they had stated *all* additional terms and conditions of the settlement agreement on the record, and an agreement not to pursue sanctions was not included in the terms and conditions. Based on the settlement terms and conditions as discussed at the settlement conference and stated on the record of the conference, the court FINDS that the settlement agreement did not encompass sanctions for alleged discovery abuses; therefore, the settlement agreement does not preclude the bringing of the motion for sanctions and the court's addressing that motion. The premise behind Defendant's motion to enforce settlement – that the settlement agreement does encompass sanctions and precludes the motion – is incorrect.

J&M cites two decisions as supporting the opposite determination. In *Wong v. Bailey,* 752 F.2d 619 (11th Cir. 1985), the parties reached a settlement in a case based on a car accident in which Wong was the passenger of a car struck by a car driven by Bailey. The parties later disagreed over whether the general release of all claims was acceptable, because Wong wanted to preserve the right to claim underinsurance benefits insuring the driver of the car in which she was a passenger. Bailey filed a motion to enforce settlement, asserting that counsel for both sides had understood that a general release was part of the settlement agreement. Wong argued that no

discussion had occurred about the specific language of the release, so no "meeting of the minds" had existed about the release terms.  The district court granted the motion to enforce settlement, finding that both parties had understood a general release would be given and that the parties had not discovered "the need for the inclusion of the language necessary to preserve Wong's rights. . . until after the settlement agreement was reached."  *Id.* at 621.  On appeal, the Eleventh Circuit affirmed the district court's ruling, focusing on the fact that, at the time of the settlement agreement, Wong's counsel did not know about the need for the special release language to preserve her rights for underinsurance benefits, and thus, he could not have contemplated that need at the time he orally settled the case.  *Id.*

The court finds that the *Wong* decision does not support J&M's position in the instant case. In this case, Moore is not attempting to change the terms of the settlement based on something he learned *after* the agreement was consummated.  Rather, he was well aware of the Defendant's alleged discovery abuses *prior to* the settlement and his counsel's repeated objections to them were well documented before trial and during the trial of this case.  Because of the vociferous objections to J&M's conduct and the specific discussion of sanctions with the court prior to settlement, the threat of sanctions was real and concrete at the time of settlement. Given that threat, hanging like the proverbial sword of Damocles, the court would have expected Defense counsel to take pains to articulate on the record any agreement to forego requesting sanctions at the time Defense counsel articulated on the record the agreement to forego notifying the third party of certain information.   The fact that the recitation of all terms and conditions included one and not the other is significant, and the only reasonable explanation for that fact is that the parties had no agreement as to sanctions.

Defendant also cites as support *In re Amway Corp.,* 579 F.2d 907 (5th Cir. 1978) (per curiam). In that case, the owner of a yacht and its captain entered into a settlement before trial regarding the captain's action against the owner to recover for injuries he received on the yacht. The owner's counsel advised the court that the settlement was "a final settlement of any and all claims of any nature whatsoever," and the court dismissed the case. *Id.* at 909. However, when the owner tendered to the captain payment accompanied by a general release, the captain refused to sign it; the captain explained that he only intended the settle the claims before the court in the lawsuit and that he had a wholly separate claim for maintenance and cure that should be unaffected by the settlement. The district court granted the owner's motion for enforcement of the settlement agreement, finding that the language of the settlement included all present and future litigation, and that because both parties knew that a claim for maintenance and cure would be made, the claim should have been specifically excluded if it were not intended to be part of the settlement. Despite this ruling, the captain refused to accept it, and the lower court eventually ordered that the captain not be required to sign a release in connection with payment. The owner petitioned for writ of mandamus, and the Court of Appeals granted the writ, modifying the district court's second order to be consistent with the first order including in the settlement not only past and present but also future litigation. *Id.* at 909.

In the instant case, Defendant proffers *Amway* as support for its argument that the settlement agreement should include all claims that Moore had against J&M, including claims for sanctions, because the parties knew about those claims at the time of settlement and did not expressly exclude them from settlement. The court finds *Amway* to be distinguishable, because the language of the settlement agreements are so different. Unlike *Amway,* the agreement in the

instant case did not state that it included "any and all claims of any nature whatsoever." Rather, the agreement stated that it was "for Mr. Moore's claims and [] attorney's fees" and then specifically enumerated matters that were not in the Complaint but were also encompassed in the agreement. (Doc. 80).  The sanction issue was not listed in those enumerated matters.

In sum, the court FINDS that the settlement agreement does not encompass and preclude the bringing of a motion for sanctions, and thus, enforcement of the settlement agreement does not require the withdrawal or denial of the motion for sanctions.  Therefore, the court finds that the Defendant's motion to enforce the settlement is due to be DENIED.

Motion for Sanctions

> What above all else is eroding public confidence in the Nation's judicial system is the perception that litigation is just a game, that the party with the most resourceful lawyer can play it to win, that our seemingly interminable legal proceedings are wonderfully self-perpetuating but incapable of delivering real-world justice.

*Capperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 903 (2009) (Scalia, J., dissenting).  This motion for sanctions is the second that the Plaintiff has filed in this case.  The trail of Defendant's "surprise" documents is an ignominious one.  As delineated above, some of those documents were ones that the Defendant produced for the first time after the denial of  summary judgment, others appeared immediately before trial, and still others materialized during the trial itself as if conjured out of thin air in response to Defendant's need for documentary support of its contentions.  The court is unsure whether the belated production of these documents means that Defense counsel are overworked, negligent, unfamiliar with Rule 26 duties, misled by their client, or deliberately playing hide-the-ball.  However, the sheer number of transgressions would

13

tend to support the view that the failure to search for and produce documents during the discovery process was a deliberate strategy, either on the part of the Defendant or its counsel or both. Yet, the failure to properly prepare defense witnesses to give correct and useful deposition testimony by searching out relevant documents prior to their depositions and disclosing those documents as required may have been the undoing of the Defense.   Litigation should not be viewed as a game.  The Federal Rules of Civil Procedure are meant to facilitate the parties' seeking truth, not to facilitate a means for resourceful lawyers to withhold information and manipulate the truth so that their clients win by stealth or ambush.

The court FINDS that the Defendant has violated Rule 37(c) in repeatedly failing to disclose material and relevant documents that fell within the Plaintiff's discovery requests and, to the extent that it was initially unaware of certain of those documents at the time of the discovery responses, in failing to supplement those responses as soon as practical upon learning of their existence.  The court further FINDS that the Defendant did not use due diligence in making appropriate and sufficient inquiries to its employees when responding to the discovery requests and in preparing for their depositions.  For example, the evidence at trial indicated that the Defendant did not make sufficient efforts prior to the very eve of trial to question the decision-makers who disciplined the Plaintiff and his comparators to find out the basis of those decisions. The court FINDS that the repeated nature of the transgressions, the evidence presented at trial[3], and the statements that Defendant made during conferences with the court,  indicate that at least part of the misconduct was tantamount to bad faith and was a willful abuse of the judicial

---

[3] For example, one witness who was an employee of Defendant testified that employees of Defendant received an email on Friday before trial that was referenced during testimony on the third day of trial but never produced to Plaintiff's counsel until that reference.

14

process.

This court has the inherent power to impose sanctions and assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith.  28 U.S.C. § 1927; *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). "[D]eeply rooted in the common law tradition is the power of any court to 'manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.'" *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1447 (11th Cir. 1985).

Therefore, pursuant to its inherent power to impose sanctions, the court, in its discretion, will GRANT the Plaintiff's motion for sanctions.  Further, the court invites the counsel for Plaintiff to provide the court on or before **March 18, 2013** with documents reflecting the time, or the best estimate of time, that counsel spent in attempting to respond to the surprise documents that the Defendant produced after the discovery deadline, in preparing the Plaintiff's motions for sanctions, and in making other efforts to obtain compliance with discovery requests and the Federal Rules of Civil Procedure.

Dated this 4th day of March, 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE